IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANASTACIO HERNANDEZ, JR.,

    Plaintiff,   No. 2:09-cv-00272 KJN

    v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.   ORDER
_____/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") partially denying plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.[1] (Dkt. No. 17.) In his motion for summary judgment, plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) failing to properly calculate plaintiff's residual functional capacity ("RFC"); and (2) relying on improper or incomplete vocational expert ("VE") testimony. (Dkt. No. 20.)

After careful consideration of the entire record and the arguments submitted by the parties, for the reasons that follow, the court will deny plaintiff's motion for summary

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 7, 10.) This case was reassigned to the undersigned by an order entered February 9, 2010. (Dkt. No. 25.)

1

judgment, grant the Commissioner's cross-motion for summary judgment, and direct the Clerk of Court to enter judgment in favor of the Commissioner.

I.   BACKGROUND[2]

Plaintiff applied for SSI benefits on October 24, 2005, alleging disability commencing on May 28, 2004. (See Administrative Transcript ("AT") 15.) Plaintiff was 47 years old on the date of the ALJ's decision. (AT 21.) Plaintiff has a high school education and past work as a custodian. (Id.)

A.   Procedural Background

The Social Security Administration denied plaintiff's application initially and upon reconsideration. (AT 15.) Plaintiff filed a request for a hearing before an ALJ, and ALJ Sandra K. Rogers conducted a hearing regarding plaintiff's claim on October 23, 2007. (Id.) Plaintiff, who was represented by counsel at the hearing, appeared and testified at the hearing. (Id.) A vocational expert also testified at the hearing. (Id.)

In a decision dated March 19, 2008, the ALJ denied plaintiff's application. (See AT 15-23.) As discussed below, the ALJ determined that plaintiff was able to perform jobs that existed in significant numbers in the national economy.[3] (AT 22.) The ALJ's decision became

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, SSI is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

Step one: Is the claimant engaging in substantial gainful

the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (AT 4-6.) Plaintiff subsequently filed this action.

  B.   Summary of the ALJ's Findings

    The ALJ conducted the required five-step, sequential evaluation. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since October 24, 2005, the application date. (AT 17.) At step two, he concluded that plaintiff had the severe impairments of "degenerative disc disease of his spine; obesity; hypertension, which is fairly well-controlled; pes planus[4]; and depression." (Id.) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in the applicable regulations. (Id.)

    The ALJ next assessed plaintiff's residual functional capacity ("RFC"). The ALJ found that:

> [T]he claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 416.967(b). He can lift 20

---

> activity? If so, the claimant is found not disabled. If not, proceed to step two.
>   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

  [4] As cited by plaintiff, "pes planus" means "flatfoot." (Dkt. No. 20 at 3 n.1, citing Dorland's Illustrated Medical Dictionary 1441 (31st ed. 2007).)

3

>pounds occasionally and 10 pounds frequently and can stand, walk or sit for six hours each in an eight hour workday. He can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds. He can frequently balance and can occasionally stoop, kneel, crouch or crawl. Mentally, he is able to perform at least simple, repetitive tasks and unskilled work.

(AT 18.)[5] In reaching her conclusion, the ALJ also discounted plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms or impairments as not fully credible.[6] (AT 19.)

At step four, the ALJ found that plaintiff's RFC precluded plaintiff from performing his past relevant work as a custodian, because that work required plaintiff to lift up to 50 pounds. (AT 21.) Finally, the ALJ found, considering the plaintiff's age, education, work experience and RFC, that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (AT 22.) Accordingly, the ALJ found plaintiff not disabled. (AT 23.)

II.   STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence' means

---

[5] With respect to the term "light work," 20 C.F.R. § 1567(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

[6] Plaintiff does not challenge the ALJ's adverse credibility finding in his motion for summary judgment.

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

III.   DISCUSSION

   A.   The ALJ Properly Evaluated The Medical Evidence

Plaintiff first contends that the ALJ failed to incorporate certain portions of the opinions of Drs. Kalman and Meenakshi into plaintiff's RFC. Plaintiff argues that his RFC should also have included limitations to simple "one-two step job instructions" and reflected his limited ability to perform detailed instructions. (Dkt. No. 20 at 8.) The Commissioner disagrees, and contends that the ALJ properly evaluated the opinions of those physicians, adopted their

opinions in large part, and committed no legal error in failing to include those precise words into plaintiff's RFC. (Dkt. No. 22 at 5-6.) For the reasons discussed below, the court finds that plaintiff's contentions do not warrant overturning the ALJ's conclusion. The ALJ did not err in her treatment of the medical evidence.

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." Magallanes, 881 F.2d at 750; see also Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (affirming where the ALJ carefully detailed arguably conflicting clinical evidence and provided reasons for crediting one treating physician's opinion over another treating physician's opinion).

Here, the ALJ limited plaintiff's RFC to "simple, repetitive tasks and unskilled work." (AT 18.) In doing so, the ALJ stated that she gave great weight to the opinions of Drs. Kalman and Meenakshi. (AT 21.) Plaintiff contends that if the ALJ had credited the portion of Dr. Meenakshi's opinion that plaintiff was limited in his ability to perform detailed instructions, that the ALJ would have specifically instructed the VE that plaintiff was limited in carrying out detailed instructions. In essence, plaintiff accepts the ALJ's conclusion that plaintiff was limited to simple, repetitive work, but is displeased that the ALJ "failed to specify the nature of the limitation" regarding simple work. (Dkt. No. 20 at 10.) Plaintiff wishes the ALJ had gone on to specify that simple meant that plaintiff could not perform detailed tasks and that plaintiff was limited to performing "one two step tasks." (Id.)

Yet absent from plaintiff's reasoning, or plaintiff's briefing, is reference to any

controlling authority which would mandate that the ALJ further define "simple."[7]

The ALJ supported her decision with substantial evidence, including according great weight to the opinions of Drs. Kalman and Meenakshi.  Dr. Kalman opined that plaintiff could perform simple tasks, and moreover, that plaintiff could interact with supervisors and coworkers, deal with the public, maintain attention and concentration and handle the ordinary stresses and pressures of work activities.[8]  (AT 159.)  It was not necessary for the ALJ to incorporate each and every one of the physician's numerous statements into the RFC or in questions posed to the VE.  See e.g., Howard v. Massanari, 255 F.3d 577, 583 (8th Cir. 2001) ("[b]y incorporating in the RFC the qualification that Howard is only capable of performing simple, routine, repetitive tasks, the ALJ properly accounted for [the claimant's] borderline intellectual functioning, a nonexertional impairment").

Similarly, as to Dr. Meenakshi, the State agency psychiatrist, he opined, among many other things, that plaintiff would be able to perform simple tasks and would have some limitations in performing detailed tasks.  (AT 186.)  These separate concepts are not inconsistent. Moreover, "[i]t is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'"  Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989); see also Stubbs-Danielson, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that the ALJ adequately captured limitations to "concentration, persistence or pace" with a restriction to "simple tasks").

As the Commissioner highlights, to the extent that the ALJ did not fully adopt all of the language used by Dr. Kalman, or Dr. Meenakshi, the crafting of the precise contours of the

---

[7] Plaintiff argues that "simple" work is "often assumed to simply mean 'unskilled work.'" (Dkt. No. 20 at 10.)  However, plaintiff provides no evidentiary or legal support for this factual conclusion.  Whether this opinion is based on counsel's experience or any binding precedent is left to speculation.

[8] Of note, plaintiff's counsel does not challenge the ALJ's failure to include these particular physician's opinions in plaintiff's RFC.

1  plaintiff's RFC is an issue reserved to the Commissioner.  (Dkt. No. 22 at 6.)

> Medical source opinions on issues reserved to the Commissioner.
>
> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability
> . . .
>
> (2) Other opinions on issues reserved to the Commissioner.  We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).  Although we consider opinions from medical sources on issues such as whether your impairment(s) meet or equals the requirements of any impairments(s) in the Listing of Impairments . . . , your residual functional capacity [RFC] or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. § 416.927(e)

The ALJ here considered and evaluated the plaintiff's physicians' assessments and used a RFC consistent with the evidence because it incorporated a limitation to simple, repetitive tasks.  Plaintiff has not presented any authority to the court which would warrant remand under these circumstances.  See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

B.     The VE's Testimony Regarding Occupations Available to Plaintiff

Plaintiff also contends that none of the occupations cited by the VE as available to plaintiff fell within his RFC.  Plaintiff argues, in a variant of the argument raised above, that the opinions of Dr. Kalman and Dr. Meenakshi, when taken together, would limit plaintiff to the performance of jobs with a reasoning level of one in the Dictionary of Occupational Titles ("DOT").  Plaintiff complains that "none of the [VE's] cited occupations require only a [DOT] reasoning level of one" and "[a] limitation to one two step tasks would preclude all work with a [DOT] reasoning level higher than one."  (Dkt. No. 20 at 10-11.)

The court finds that the DOT reasoning levels, as the Commissioner contends, are not parallel with an ALJ's RFC assessment.  Although plaintiff presents a fairly lengthy

argument as to why the DOT's reasoning levels must govern the VE's available jobs analysis, what is absent from plaintiff's analysis is any controlling authority adopting this reasoning or supporting remand. (Dkt. No. 20 at 8-10.)

In a case on point, Meissl v. Barnhart, 403 F. Supp. 2d 981, 982 (C.D. Cal. 2005), the claimant argued that her limitation to simple, repetitive tasks was inconsistent with her ability to perform the positions identified by the VE which required DOT reasoning levels two or three. The court thoroughly explained the DOT's classification of reasoning levels using a six point scale.[9] The claimant focused on the use of the word "detailed" and sought to equate the DOT's use of "detailed" with the Social Security's use of "detailed instructions." The court found that "such a neat, one-to-one parallel" did not exist. Meissl, 403 F. Supp. 2d at 983-84. The court in Meissl noted that the DOT uses a "graduated, measured and finely tuned scale," while Social Security separates a claimant's ability to understand and remember into just two categories: "short and simple instructions" and "detailed" or "complex." Id. at 984. The claimant's position also ignored the qualifier the DOT places on the term "detailed" as also being "uninvolved." Id. ("While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also ... downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'"). A reasoning level of two, then, does not conflict with a RFC's limitation to simple, repetitive tasks.

The Eastern District of California, among other courts, has adopted the reasoning in Meissl and this court finds no reason in the instant case to depart from that sound analysis. See, e.g., Moua v. Astrue, 2009 WL 997104 (E.D. Cal. 2009); Angulo v. Astrue, 2009 WL 817506 (E.D. Cal. 2009); Issac v. Astrue, 2008 WL 2875879 (E.D. Cal. 2008); see also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that DOT level-two reasoning

---

[9] "A level two reasoning indicates that the job requires the person to be able to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions,' and '[d]eal with problems involving a few concrete variables in or from standardized situations.'" Meissl, 403 F. Supp. 2d at 982.

9

appears consistent with a plaintiff's RFC which is limited to simple, repetitive work). Because the ALJ's RFC determination was supported by substantial evidence and the ALJ found that the VE's testimony was consistent with DOT, "[t]he ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper." Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

### C. The Remainder of Plaintiff's Contentions Regarding the VE's Testimony

Plaintiff next contends that the VE erred in providing citations to occupations that are all "light exertional jobs" rather than "sedentary." (Dkt. No. 20 at 12.) Plaintiff correctly notes that at step five, the "Commissioner bears the burden of proving that the claimant can perform 'other jobs that exist in substantial numbers in the national economy.'" Bruton v. Massanari, 268 F.3d 824, 828 n.1 (9th Cir. 2001).

Here, however, the VE did testify regarding the availability of light and sedentary cashier jobs and light and sedentary small parts assembly jobs. (AT 295-96). Although the record would have been clearer had the ALJ asked the VE distinct questions about the light versus sedentary positions within each of the identified positions, the ALJ permissibly relied upon the VE's testimony about the availability of sedentary positions for a person with plaintiff's RFC:

> ALJ: And I guess lastly if I were to find the Claimant capable of only sedentary work, would there still be jobs existing in the national or regional economies that such a person could perform?
>
> VE: The jobs that I would be able to identify would be small parts assembler. It's a DOT code of 739.687-020, sedentary, unskilled. There are approximately 15,000 individuals employed in those positions. The next is a cashier. That's a DOT code of 211.462-010, sedentary, unskilled. There are approximately 14,000 individuals employed in that occupation.

(AT 296.) The VE's answer to the ALJ's question incorporating the supportable RFC criteria constitutes substantial evidence upon which the ALJ is entitled to rely. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001).

Finally, plaintiff avers that the VE never specified the exact extent of the erosion of the occupational bases available to plaintiff when plaintiff was limited to simple, repetitive tasks. (Dkt. No. 20 at 12, 14.) Again, without citation to any legal authority, plaintiff argues that the ALJ's "reliance on the cashier jobs to any extent given the VE's testimony [regarding erosion] requires reversal." (Dkt. No. 20 at 14.) The ALJ agreed with and adopted the VE's testimony that there "remain a significant number of jobs, particularly small parts assembler jobs, despite the erosion." (AT 22.) This court finds the ALJ's conclusion properly supported by her reasoning and the record.

The ALJ sought testimony from the VE to determine the extent to which plaintiff's limitations eroded the unskilled light occupational base. The ALJ noted in his ruling that the VE testified that given all of the factors involved in plaintiff's case, such an individual would still be able to perform the requirements of representative occupations in California, such as a cashier, requiring light exertion, a small parts assembler, requiring light exertion, a small parts assembler at the sedentary level and a cashier at the sedentary level. (AT 22.) In conclusion, the ALJ found the vocational expert's testimony provided substantial evidence that significant numbers of jobs, even sedentary jobs, existed. (AT 22, 295-96.) See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (finding that 64,000 jobs nationwide is a significant number). The ALJ did not err at step five.

IV.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 20) is denied.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 22) is granted.

////

////

////

3. The Clerk of Court enter judgment in favor of the Commissioner.

**IT IS SO ORDERED**.

DATED: September 28, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE